*Decisions will be entered under Rule 50.*

ALBERT WINNICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

IDA WINNICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 23478, 23479. Promulgated September 28, 1951.

*Phillip Nusholtz, Esq.*, for the petitioners.
*Cyrus A. Neuman, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* We are here concerned with the sales in 1945 and 1946 of 51 of the 52 houses that were built in 1943 and 1944 as rental houses and were rented for a time to defense workers in the Detroit area.

The petitioners take the position that the rental properties were not held primarily for sale to customers in the ordinary course of trade or business but, rather, property used in their trade or business and that the gains on the sales are to be treated as capital gains under the provisions of section 117 (j) of the Internal Revenue Code. The respondent has determined that section 117 (j) is not applicable and that the gains are taxable as ordinary income.

Both parties treat the issue as one of fact to be determined by the surrounding facts and circumstances. No one test is decisive of the

issue. Over a period of years, the courts have formulated and applied a number of tests to resolve the issue here presented. Most of them are summarized in the case of *Boomhower* v. *United States*, 74 F. Supp. 997. As stated by the court, they include: continuity of sales or sales-related activity over a period of time; frequency of sales, as opposed to isolated transactions; the activity of the seller or those acting under his instructions or in his behalf; the extent or substantiality of the transactions; and the reasons for, purpose, or nature of the acquisition.

Application of the above tests to the facts in this case requires that the respondent's determination be sustained. There was a continuity of sales of the rental houses extending over the period from March 1, 1945,[3] throughout the rest of that year and into 1946, the last of the group being sold in 1947. There was an obvious frequency of sales, and clearly they cannot be regarded as isolated transactions. The activity of the brokers in the taxable years was not an activity directed toward maintenance of the properties as an investment through rentals, but was directed toward effecting sales through newspaper advertisements and signs on the properties. In extent, the sales activities covered the entire group of 52 rental houses.

One of the statutory elements that removes gain on sales of property from capital gain treatment is that the property be held by the taxpayer primarily for sale to customers "in the ordinary course of his trade or business." On the record in these proceedings, there is no room for doubt that the petitioner Albert Winnick was engaged in the business of constructing houses for sale. He started in the business of building houses in 1938 and until 1943 he built only for sale. In 1943, war-time restrictions required that a certain portion of new construction be for rental purposes as a condition to obtaining priorities for materials. The partnership agreed to abide by the rules of the National Housing Agency in applying for priorities. We have no reason to doubt the good faith of the partners in making such agreement with governmental housing authorities. But at the same time permission was obtained to construct 29 houses for immediate sale, and all of them were constructed and sold in 1943 and 1944. Again, in 1946, shortly after restrictions were lifted, 12 new houses were constructed and sold upon completion. These facts establish the existence of a trade or business consisting of the construction and sale of houses, and that sales of houses were made in the ordinary course of such trade or business.

The petitioners present the argument that it would be inconsistent for the petitioners to represent in the applications for priorities that

[3] The parties have stipulated that the partnership commenced selling the rental properties on March 1, 1945. A tabulation included in the stipulation shows a sale on January 2, 1945, of a rental house that had been held for less than 6 months.

they would hold the properties for rental and at the same time have the purpose of holding them primarily for sale. They cite memorandum opinions of this Court in which we took into consideration the intent of the taxpayers in statements made to governmental housing agencies. We have said above that we do not doubt the good faith of the agreement to abide by the housing regulations, and we do not question the soundness of the decisions which took into consideration such agreements or the representations made to the housing agencies. However, such agreements or representations, and the fact of rental of the properties in prior years, are not necessarily controlling in determining the purpose for which the properties were held in the taxable years. *Lucille McGah*, 15 T. C. 69 (on appeal, C. A. 9). There may be a change of intent between the time of acquisition and the time of sale, and if property originally acquired for investment is held in the taxable year primarily for sale to customers in the regular course of trade or business, the gain realized in the taxable year is not subject to capital gain treatment. This conclusion is based on the language of section 117 which, in the definition portions of both subsections (a) and (j), speaks of "property held by the taxpayer" rather than property "acquired" or "purchased." *Richards* v. *Commissioner*, 81 F. 2d 369. This view was expressed clearly in the *McGah* case *supra*, where we said:

It has been held that an original status of property is not determinative of the question of whether it was, at the time of its sale, held for investment purposes or for sale to customers. See *Carl Marks & Co.*, 12 T. C. 1196, 1202, where this Court said that the "crucial factor to consider in determining the character of" the property in question is the purpose for which it was held during the period in question, i. e., in the taxable year.

In the case of *Carl Marks & Co.*, cited in the above quotation, the taxpayer transferred securities, which had been held primarily for sale, from its dealer account to its investment account. We held that such transferred securities became capital assets, and said in part:

Certainly, it cannot be argued that securities once acquired for resale to customers must forever retain their dealer status, when in fact there has been a conversion of those securities from a dealer to an investment account.

The principle followed in the above-quoted cases is that the purpose for which property is originally acquired does not stamp it with a permanently fixed and unalterable status. The taxpayer may change his objective with respect to his property, and thereby change the status of the property, tax-wise, from capital assets to non-capital assets or vice versa. While the purpose of the original acquisition may be a factor to be considered in determining the status of the property in a subsequent period, *Boomhower* v. *United States*, *supra*, it is not necessarily controlling. Even though we accept as a fact the position of the petitioners that the houses were constructed for invest-

ment purposes in 1943 and 1944, the evidence establishes that that purpose did not persist through the years 1945 and 1946. The tests most frequently applied in recent cases are those of continuity and frequency of sales, the activity of the seller or his agents, and the extent of the transactions. The application of these tests, as developed by the evidence, convinces us that beginning not later than the year 1945, the primary purpose for which the 52 rented houses were held was for sale to customers in the ordinary course of business.

We recognize that not all sales of property previously rented are outside of the capital gain provisions, and the petitioners cite decisions to that effect. Upon examination, the decided cases involved factual situations different from those in the present proceedings. For the most part, the sales in those cases were isolated transactions and involved only a comparatively small portion of the investment or rental properties. They are not helpful in the decision of this case, which is essentially a fact case. *Rubino* v. *Commissioner*, 186 F. 2d 304.

For reasons above stated, we find no error in the respondent's determination.

*Decisions will be entered for the respondent.*