LUCILLE MCGAH, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 20772, 20773, 20774, 20775.   Promulgated March 11, 1952.

*M. W. Dobrzensky, Esq.*, for the petitioners.
*Charles W. Nyquist, Esq.*, for the respondent.

---

[1] The following proceedings have been consolidated:

| Docket No. | Petitioner |
|---|---|
| 20772 | Lucille McGah |
| 20773 | E. W. McGah |
| 20774 | Carole O'Shea |
| 20775 | John P. O'Shea |

SUPPLEMENTAL OPINION.

HARRON, *Judge:* We adhere to the reasons stated in our Opinion (15 T. C. 69) in this proceeding which led us to conclude that the dwelling units in question which were sold during the taxable year were held primarily for sale to customers in the ordinary course of the partnership's business. However, it may be well to point out that the facts in this proceeding are substantially the same as the facts in the proceeding of *Louis Rubino*, Docket Nos. 16667, 16668, which was decided by this Court under an unpublished Memorandum Findings of Fact and Opinion which was entered on December 12, 1949. Appeal was taken from our decision; the decision was affirmed, *Rubino* v. *Commissioner*, 186 F. 2d 304 (C. A. 9, January 5, 1951), after the promulgation of our Findings of Fact and Opinion in this proceeding. We did not cite our decision in the *Rubino* case in our Opinion in this proceeding because of our practice which is that memorandum decisions are not cited. Recently, in *Albert Winnick*, 17 T. C. 538, 543, 544, upon facts which closely resemble the facts here, we concluded that property sold was held primarily for sale to customers in the course of the business involved in the *Winnick* case, and we believe it is appropriate to call attention to the decision in the *Winnick* case at this time.

We thought we indicated in our Findings of Fact and Opinion that it was doubtful that the San Leandro partnership really intended after the beginning of 1943, to hold the housing units in question primarily for investment purposes, and that if it were to be assumed, *arguendo*, that such was the purpose in the beginning of 1943, the purpose was changed in the middle of 1944, at the latest, when the Central Bank pressed the partnership to sell houses. But by way of clarification, we may now reiterate that view. As we had occasion to point out in the *Rubino* case (in our unpublished opinion), where the facts so closely resemble the facts here, a reasonable view is that under the facts, if the partnership had been in the business of renting houses, it "would have leased them for reasonably long periods of time," but having rented them on oral, month-to-month arrangements,

there arises a strong inference that the partnership wished to keep the property "easily available for sale," or, in other words, that the partnership was holding the houses primarily to sell.

The evidence which most strongly supports the finding of fact that the houses in question were held primarily for sale, and therefore fall outside the statutory definition of capital assets, consists of the following: The partnership ascertained in the early part of 1943 that Federal regulations did not prevent selling all of the houses in tract No. 68, and the partnership sold houses continuously in its fiscal years ending in 1943, 1944, 1945, 1946, and 1947—74, 14, 31, 12, and 3 houses were sold respectively, so that at the end of 1947, out of 169 houses constructed, 134 houses had been sold, and only 35 remained. In that situation, we think the fact that the houses were rented on month-to-month tenancies shows that the renting of the houses was merely incidental to a primary or "essential" and "substantial" purpose of holding the houses for sale. Frequency, continuity, and substantiality of sales is understood, usually, to indicate that the primary purpose of holding property is the sale of the property. Other factors which we think are important here are that the partnership undertook the venture of building houses on tract No. 68 with an insufficient amount of capital of its own, that it borrowed a large amount to finance the project, and that the ceiling rents which it was permitted to charge could not yield enough above the carrying charges. All of these factors, as we have previously noted, indicate strongly that the holding of the houses was not primarily for an investment and income producing purposes.

Finally, all of the inferences which we find from all of the facts before us relating to the situation in the beginning of 1943 are sustained by the further fact that the petitioners have admitted that they wanted to continue building operations, and in order to do so, the partnership had to apply to its bank for new capital through borrowing from the bank. The "suggestion" of the bank in the middle of 1944 that the partnership should sell the houses is a factor which weighs against the general contention of the petitioners for it only brings out clearly the correctness of the inference to be drawn from all of the evidence that from practically the beginning, i. e., the early part of 1943, the primary purpose must have been to sell the houses in tract No. 68, and that the renting of the houses was only incidental to the essential objective.

Under these circumstances, we must conclude that the so called liquidation of a capital asset test is not properly to be applied here. Only if there is doubt about the correctness of our interpretation of all of the evidence do we come to the time when the bank "suggested" that houses should be sold, i. e., the middle of 1944. If our understanding of all of the situation as it existed after the beginning of

1943 is wrong, then we must certainly find that after the middle of 1944 (the record is not specific as to the exact date) the alleged original purpose of holding for investment (as to which we do not agree with the petitioners) changed to a primary purpose of holding for sale. *Albert Winnick, supra.*

Since our original decision of the question in these proceedings, the Court of Appeals for the Ninth Circuit has affirmed our Memorandum Findings of Fact and Opinion in the proceeding of Rollingwood Corporation where the facts closely resemble the facts here. *Rollingwood Corporation* v. *Commissioner*, 190 F. 2d 263. We need not quote from the Opinion of the Court of Appeals in that case but regard the reasoning applied there to be squarely applicable here. It is our opinion that San Leandro intended to sell the houses in question and that it rented them only pending sales thereof; that such purpose existed in the early part of 1943, or at the latest, in the middle of 1944. Accordingly, we reject the petitioners' contention and sustain the respondent's determination. It is held that the gains realized from the sales of the 14 houses were ordinary gains.

*Decisions will be entered for the respondent.*