Russ Prater, Inc. v. Commissioner.
Russ Prater, Inc. v. Commissioner
Docket No. 29403.
United States Tax Court
1952 Tax Ct. Memo LEXIS 198; 11 T.C.M. (CCH) 538; T.C.M. (RIA) 52158; May 29, 1952
*198 Upon the facts, held: that 61 houses sold during the fiscal year ending February 28, 1947, were held primarily for sale to customers in the ordinary course of petitioner's business, and the gains realized were ordinary income, not long-term capital gains. Carl T. Smith, Esq., for the petitioner. George E. Gibson, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioner's income tax of $20,195.44 for the taxable year ending February 28, 1947. The adjustment upon which the principal amount of the deficiency was computed is explained in the deficiency notice as follows: "It is held that income in the amount of $161,795.21, *199 reported in your return as capital gain, is ordinary income realized from the sale of property held primarily for sale to customers in the ordinary course of your trade or business, therefore, you are not entitled to use the alternative tax computation provided by Section 117 (c) (1) of the Internal Revenue Code." The assignment of error is as follows: "(a) In determining the tax liability of the petitioner for the year ended February 28, 1947, [fiscal year] the Commissioner considered the profit of $130,045.13, realized from the sale of properties, as ordinary income; whereas, the petitioner contends this amount is taxable as longterm capital gain and entitled to the alternate tax computation provided by Section 117 (c) (1) of the Internal Revenue Code." Findings of Fact The petitioner Russ Prater, Inc., is a corporation organized under the laws of the State of Kansas, with its principal place of business at Wichita, Kansas. It filed its income tax return for the fiscal year ended February 28, 1947, with the Collector of Internal Revenue for the District of Kansas. In March of 1943, Russ Prater decided to participate in the *200 Federal Housing Administration program of building "defense housing" and created the petitioner corporation for that purpose. At that time the construction of all private housing was "frozen." The petitioner was incorporated under the laws of Kansas on March 12, 1943, with a capitalization of $25,000 represented by 250 shares of common stock. Russ Prater owned 248 shares, his wife Alice owned one share, and his bother Fred owned one share. Russ Prater was the individual actually responsible for the corporation's activity. Petitioner immediately entered upon the construction of defense housing projects in Wichita, Kansas. A little later, at the insistence of Federal Housing Administration officials, it also undertook the construction of defense housing projects in Hays, Dodge City, McPherson, Great Bend, Pratt, and Ellinwood, Kansas. In all of these communities there was a housing shortage due to defense activities located in those areas. Local people were either not available or were unwilling to undertake the construction projects. All of the projects undertaken by petitioner had been programmed by the National Housing Agency. Petitioner made applications to the War Production *201 Board and was granted priorities to construct the several housing projects. The building of the projects was financed under Title VI of the National Housing Act through loans of 90 per cent of the "value" of the buildings at four per cent interest. All of the projects were subject to General Orders No. 60-3, 60-3A, 60-3B, and 60-3C of the National Housing Agency. Those orders related to "methods of disposition of private war housing including rent levels, sales prices, and petitions to the National Housing Agency." Generally, these houses were to be held for rental by war workers though under certain conditions houses could be sold. Petitioner rented houses to war workers on a month-to-month basis. Prior to October 15, 1945, petitioner sold some of the houses in accordance with the restrictions above. However, on October 15, 1945, all restrictions on the sale and rental of defense housing were removed by orders of the National Housing Agency and War Production Board. Thereafter, sales of houses were considerably increased. The following schedule shows the number of houses constructed and sold by petitioner during each year of its active existence: Fiscal
Balance
Year
begin-
Con-
Ending
Ending
ning
structed
Sold
Balance
2-29-44
75
1
74
2-28-45
74
51
31
94
2-28-46
94
71
40
125
2-28-47
125
72
114
83
2-29-48
83
301
139
245
2-28-49
245
229
211
263
2-28-50
263
231
32
799
767
*202 The following is a schedule showing by localities and fiscal years the number of houses constructed and sold, including those sold prior to being rented and those rented prior to sale, and the number remaining on hand: Great
Great
Dodge
McPher-
Bend
Bend
Ellin-
Wichita
Hays
City
son
Pratt
#1
#2
wood
Total
Units Constructed: Year ended: 2/29/44
33
25
17
75
2/28/45
25
26
51
2/28/46
26
15
30
71
2/28/47
72
72
2/29/48
301
301
2/28/49
229
229
2/28/50
0
Totals
635
25
17
25
26
26
15
30
799
Units Sold: Year ended: 2/29/44 * 1
1
2/28/45 * 13 * 5 * 1 * 5 * 7
31
2/28/46
2
6
2
2 * 7 * 3 * 18
40
2/28/47 * 53
4
10
19
6
11
4
7
114
2/29/48 * 109
2
5
12
8
3
139
2/28/49 * 207
1
1
2
211
2/28/50 * 231
231
Totals
603
25
17
25
26
26
15
30
767
Units remaining: 2/28/50
32
0
0
0
0
0
0
0
32 * Includes the
following number of
units sold before
they were rented
601
10
5
1
5
10
3
18
Number of
units rented
prior to sales
15
12
24
21
16
12
12
*203 Some of the houses sold had never been rented. Petitioner sold the houses initially because of financial difficulties. In the taxable year in question petitioner had determined it was more profitable to sell than rent. Special difficulties were experienced in managing the properties outside Wichita. All of the houses outside of Wichita were sold prior to the close of the fiscal year ended February 28, 1949. The houses were sold by the same agents who rented the properties, primarily on an individual basis. Subsequent to Russ Prater's death on June 13, 1949, petitioner discontinued new construction activity and liquidated the balance of its houses. In its return for the taxable year in controversy which is the fiscal year ended February 28, 1947, petitioner reported the gains totalling $130,045.13 from the sales of the 61 defense houses in that year as long-term capital gains, and the gains totalling $31,750.08 on 53 houses built in Wichita and sold during that year as short-term capital gains. The Commissioner determined that the entire gain of $161,795.21 from the sales of all 114 houses was "ordinary income realized from the sale of property held primarily for sale to customers *204 in the ordinary course of your [petitioner's] trade or business." The petitioner has not contested the Commissioner's determination with respect to the 53 Wichita houses. The 61 defense houses sold by petitioner during its fiscal year ended February 28, 1947, were held by petitioner during that year primarily for sale to customers in the ordinary course of business. Opinion BLACK, Judge: The only issue presented here is whether the gain resulting from the sale of 61 houses in the fiscal year ending February 28, 1947, is a long-term capital gain or ordinary income. Respondent contends that these houses were held primarily for sale to customers in the ordinary course of trade or business so that their sale would not constitute a capital gain under section 117 (j) of the Internal Revenue Code. Petitioner contends that these properties were held primarily for rental and the gains, therefore, are taxable as capital gains. The applicable statute is printed in the margin. [1]
*205 There was a continuity and frequency of sales from the year 1946 to 1950. The sales were substantial and cannot be regarded as isolated transactions or as a liquidation of an investment. Throughout this period, substantial numbers of new houses continued to be constructed. Moreover, many houses were sold before they were ever rented. In the recent case of Mauldin et al. v. Commissioner, (C.A. 10, decided March 19, 1952) 195 Fed. (2d) 714, affirming 16 T.C. 698, the circuit court said: "There is no fixed formula or rule of thumb for determining whether property sold by the taxpayer was held by him primarily for sale to customers in the ordinary course of his trade or business. Each case must, in the last analysis, rest upon its own facts. There are a number of helpful factors, however, to point the way, among which are the purposes for which the property was acquired, whether for sale or investment; and continuity and frequency of sales as opposed to isolated transactions. [Citing cases.] * * *" Our decision in the instant case is controlled, we think, by decisions on the identical issue and somewhat similar facts in Lucille McGah, 15 T.C. 69, *206 remanded 193 Fed. (2d) 662, further findings of fact 17 T.C. 1458, promulgated March 11, 1952; and Albert Winnick, 17 T.C. 538. In the Winnick case, among other things, we said: "* * * There may be a change of intent between the time of acquisition and the time of sale, and if property originally acquired for investment is held in the taxable year primarily for sale to customers in the regular course of trade or business, the gain realized in the taxable year is not subject to capital gain treatment. This conclusion is based on the language of section 117 which, in the definition portions of both subsections (a) and (j), speaks of 'property held by the taxpayer' rather than property 'acquired' or 'purchased.' Richards v. Commissioner, 81 Fed. (2d) 369. This view was expressed clearly in the McGah case, supra, where we said: "'It has been held that an original status of property is not determinative of the question of whether it was, at the time of its sale, held for investment purposes or for sale to customers. See Carl Marks & Co., 12 T.C. 1196, 1202, where this Court said that the "crucial factor to consider in *207 determining the character of" the property in question is the purpose for which it was held during the period in question, i.e., in the taxable year.'" It is unnecessary to reexamine in detail the legal questions involved but the cases cited above are authority for the following propositions of law relevant here: The question is one primarily of fact with the burden on petitioner. The tests most frequently applied are the continuity and frequency, and substantiality of sales, though other factors are relevant. An original purpose of rental is not binding on subsequent years. The fact of renting properties does not preclude their being held for sale to customers in the ordinary course of trade or business. On the last proposition, see also King, et al. v. Commissioner, 189 Fed. (2d) 122, affirming a Memorandum Opinion of this Court [9 TCM 136,], certiorari denied 342 U.S. 829; and Rollingwood Corporation v. Commissioner, 190 Fed. (2d) 263, affirming a Memorandum Opinion of this Court. Having considered all the facts, we hold that the 61 houses in question were held primarily for sale to customers in the ordinary course of trade *208 or business during the taxable year in question, and consequently the gains realized from their sales were ordinary income. Decision will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(j) Gains and Losses From Involuntary Conversion and From the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of property used in the trade or business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable.↩