San Jacinto Homes v. Commissioner.
San Jacinto Homes v. Commissioner
Docket No. 31877.
United States Tax Court
1952 Tax Ct. Memo LEXIS 44; 11 T.C.M. (CCH) 1089; T.C.M. (RIA) 52321; November 5, 1952
*44 Held, profits derived from the sale of defense housing units originally built for rental purposes but held primarily for sale during the taxable year are taxable as ordinary income. Paul Port, Esq., for the petitioner. John P. Higgins, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax of petitioner for the fiscal year ended February 28, 1947, in the amount of $13,631.06. The only issue presented is whether the gain realized upon the sale of certain properties was taxable as ordinary income or, under the provisions of section 117 (j), Internal Revenue Code, as capital gain. Findings of Fact The facts stipulated are found accordingly. San Jacinto Homes, the petitioner, is a Texas corporation organized in 1943 with its place of business in Houston, Texas. The petitioner filed its income tax return for the fiscal year ended February 28, 1947, with the collector of internal revenue for the first district of Texas. Dow J. Zabolio, the owner of more than 90 per cent of the petitioner's stock, had been in the business of building houses for sale since 1928. *45 He had owned a few rental properties in the early 1930s. In 1943 home construction was halted by wartime restrictions and Zabolio was not engaged in any business. In 1943 there were a large number of defense plants and war industries in and around Houston, Texas. By reason of the increased number of war workers in the area, there developed a great need for additional housing facilities. Prior to 1943 the Federal Housing Administration enlisted the aid of the builders in the Houston area in an effort to provide defense housing units for war workers. No materials for building could be obtained at this time except through priority certificates issued by the War Production Board. In obtaining such priorities it was necessary that builders agree to rent the houses at a fixed monthly rental to workers engaged in war activities, all under regulations issued by the National Housing Administration. Zabolio entered the business of building defense housing units. The petitioner was organized and it built 109 units for defense housing purposes under Title VI of the National Housing Act. These houses were completed during the fiscal years ended February 29, 1944, and February 28, 1945. Under *46 the regulations in effect, the petitioner was permitted to sell one-third of the units when they were completed. One-third of the houses constructed by petitioner were sold as they were built. Most of the remaining units were rented at a ceiling of $45 a month. The tenancies were on a month to month basis. In 1944, prior to the completion of the war housing units, the petitioner started a second project consisting of a community of apartments known as the Southmore Apartments. These units were more expensive than the war housing units and had a higher monthly rental. Tenants were first accepted in the new project in July, 1945. The total cost of this project was between $350,000 and $400,000. The new apartment project was principally financed by a loan from the American General Insurance Company. The loan limit available for each building under the regulations was $12,000. The cost of the buildings ran between $20,000 and $30,000 each. The petitioner began a second and third apartment project in 1948 and 1949. Some of these apartments were furnished and rented on that basis. All restrictions on the sale of the war housing units were removed in October, 1945. Price controls had *47 been removed from the sale of these properties in October, 1945, also. Rent controls were not removed until several years later. The Federal Housing Administration and Veterans Administration suggested to local builders that houses could be sold to veterans and others in need of housing. The amounts received upon the sale of these units by the petitioner was substantially more than the price ceiling which had existed. The petitioner's balance sheet as of February 28, 1947, reflects assets, consisting of rented apartments, cottages and business buildings in the amount of $309,908.28. Rental land properties were carried at $39,514.41 and unimproved real property at $29,779.75. Mortgages payable as of that date were recorded in the amount of $292,283.17. Earned surplus was carried on the petitioner's balance sheet at $9,848.14 as of February 28, 1946, and a year later at $109,842.67. When, in 1945, petitioner decided to sell the housing units the company entered into an agreement with a firm of realtors. No advertising campaign was undertaken but the majority of the houses were sold in less than 90 days after being put on the market. The houses were sold principally under Government *48 financing programs for veterans. The number of housing units completed, the rental therefrom, the gains on the sale of the units for the years ended February 28, 1945, through 1947, are as follows: 1945
1946
1947
Housing units completed
90
44
34
Gross rental income
$ 27,206
$ 48,619
$ 50,942
Net profit from rentals
$ 9,309
$ 6,289
$ 16,857
Grain from sale of units rented and held more
than six months
$ 35,688
$130,317
Gain from sale of other units
$ 17,668
$ 3,576
$ 3,394
Total units sold
34
31
74
Units sold which had been rented over six months
26
58
Other units sold
34
5
16
Total assets of companies
$455,022
$732,075
$535,317
Assets in rental property
$298,447
$534,651
$332,958
Of the war housing units owned by the petitioner for more than six months, seven were sold prior to October, 1945; six were sold in October; five in November; five in December, 1945; three in January, 1946, and none in February of that year. In the fiscal year ending February 28, 1947, 38 units were sold in May, 1946; five were sold in June of that year; five in July; and a few more were sold in later months. After 1945 Zabolio was also *49 engaged in the building of houses for sale through a corporation known as the San Jacinto Lumber and Building Company. This corporation sold 27 houses in 1947; 133 in 1948; and 9 in 1945. The war housing units built in 1943 and 1944 by the petitioner were held by it during the taxable year ending February 28, 1947, primarily for sale to customers in the ordinary course of trade or business. Opinion VAN FOSSAN, Judge: The sole question in this proceeding is whether the sale of the war housing units held by the petitioner for more than six months resulted in ordinary income or a gain to be taxed as capital gain under the provisions of section 117 (j), I.R.C.[1] It is the petitioner's contention that the transactions meet the requisites of section 117 (j), I.R.C. Respondent contends that this provision is unavailable to the petitioner because the petitioner was in the trade or business of selling housing units during the taxable year and that the houses in question were held by the petitioner primarily for sale to customers in the ordinary course of this business. Numerous cases have considered this question but the determination in *50 each instance is dependent upon the facts of the particular case. Mauldin v. Commissioner, 195 Fed. (2d) 714, affirming C. E. Mauldin, 16 T.C. 698. Among the criteria and factors employed in reaching the determination are, the purpose of the taxpayer in acquiring and disposing of the properties; the continuity of sales; the number; substantiality and frequency of sales; and the sales activity carried on. Boomhower v. United States, 74 Fed. Supp. 997; W. T. Thrift, Sr., 15 T.C. 366
*51 The petitioner's sole stockholder had been engaged in the building of houses for sale since 1928. The war housing units built by the petitioner under Title VI of the National Housing Act during 1943 and 1944 were completed under Government regulations requiring two-thirds of the units to be rented to certain persons at fixed rentals. One-third of these units could be, and were, sold by the petitioner upon completion. The remaining units, the status of which is in issue here, were originally built for rental purposes inasmuch as they had to be rented under the existing Government regulations. However, the initial purpose in acquiring these units is not the controlling criterion under the statute. A change in intent may occur between the acquisition and the disposition of the property. Lucille McGah, et al., 15 T.C. 69, remanded 193 Fed. (2d) 662, upon remand, 17 T.C. 1458. Seven of the units in question were sold prior to October, 1945; six were sold in that month; five were sold in November, 1945; five in December of the same year; and three were sold in January, 1946. These sales were made prior to the taxable year here in issue. Thirty-eight *52 of the units were sold in May, 1946; five were disposed of in June, and five were sold in July, 1946. It is evident to us that the petitioner had decided to sell these units prior to the taxable year in question. Besides the one-third sold upon completion, 26 units were sold before the beginning of the taxable year. In October, 1945, the petitioner was freed from the restrictions upon the sale of the houses and immediately began selling the units in substantial numbers with frequency and continuity of sales. The petitioner's actions in selling the units when it became possible to do so evidences an intent at that time, if not earlier, to hold the units primarily for sale. The tenancies were upon a month to month basis, enabling quick disposition of the properties when the proper time came. Price controls had been lifted from the sale of the housing units in October, 1945, but rent controls remained. Manifestly, greater profits would accrue from sale of the units than from the low rentals received. The net profits from rentals were exceeded in 1945, 1946 and 1947 by the gains in each year from the sale of the housing units. The conclusion to be drawn from this evidence is that the *53 houses were built under Government regulations requiring rental but that the petitioner intended to sell them if and when possible. This intention was reached prior to the taxable year in question. Although no sales campaign was conducted, it does not appear that solicitation was necessary because of the strong demand for housing. We are struck with the similarity of the circumstances here presented and those disclosed in Albert Winnick, 17 T.C. 538, and Victory Housing No. 2, Inc., 18 T.C. 466 (June 6, 1952). We are of the opinion that the same result should obtain here. In view of all the facts, it is our conclusion that the units were held primarily for sale to customers in the ordinary course of trade or business during the taxable year and for that reason the provisions of section 117 (j) I.R.C. are not applicable. Decision will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES * * *
(j) Gains and Losses from Involuntary Conversion and from the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of Property Used in the Trade or Business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable. (2) General Rule. - If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *↩