Reuben Eckstrom v. Commissioner.
Eckstrom v. Commissioner
Docket No. 38976.
United States Tax Court
1953 Tax Ct. Memo LEXIS 348; 12 T.C.M. (CCH) 214; T.C.M. (RIA) 53070; March 5, 1953
*348 Capital gain or ordinary income. - Petitioner constructed ten houses in 1944, selling two of them in 1945 and renting the balance to defense workers in accordance with Government regulations. Petitioner sold the remaining houses in February and March 1946 after Government restrictions had been lifted on October 15, 1945. Held, the houses sold in 1946 were property held primarily for sale to customers in the ordinary course of business, and the gain realized is taxable as ordinary income. John C. Mullen, Esq., for the petitioner. Marvin E. Hagen, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $1,428.21 in the income tax liability of the petitioner for *349 the calendar year 1946. The only issue is whether or not a gain realized on the sale of ten houses in the taxable year is taxable as ordinary income or as long-term capital gain. Some facts were formally stipulated and are included herein by reference. Findings of Fact The petitioner is an individual residing in Omaha, Nebraska. He filed his Federal income tax return for the calendar year 1946 on a cash basis with the collector of internal revenue for the district of Nebraska. Petitioner has been engaged in the business of building, selling and repairing houses on a contract basis in Omaha from 1931 to the present date. From 1931 to 1942 petitioner built and sold three or four houses every year. Because of material shortages petitioner did not build any houses in 1942 and 1943. During those years he worked as a construction worker on a bomber plant at Mead, Nebraska, and on a Government hospital at Topeka, Kansas. On September 25, 1943, petitioner filed an application with the War Production Board in which he requested that Board's approval for the construction of ten defense homes. This application contained the statement that the houses would be held for rental purposes *350 under General Orders 60-2 and 60-3 of the National Housing Agency. Petitioner therein stated the monthly rental was to be $47.50 per house. The application was approved October 21, 1943. On November 5, 1943, petitioner requested of the Federal Housing Administration that it grant priorities for materials to be used in the construction of the ten houses and his request was approved on November 6, 1943. The ten houses were completed on September 1, 1944, at a cost of $4,550.60 per unit. The construction was financed by loans from the Western Securities Co. of Omaha, Nebraska. The loans were guaranteed by the Federal Housing Administration to 90 per cent of the total cost of each house and lot. Two of the houses were sold on January 1, 1945, under the National Housing Agency regulations which permitted the builder to sell one-third of the houses he had constructed. These two houses are not involved in this proceeding. The other eight houses were rented to war workers on oral month-to-month tenancies. These eight houses, together with one duplex house, were the only rental property petitioner held during the years 1944 to 1946, inclusive. Petitioner also built two houses in 1945 which *351 were never rented. He sold them in 1946. On October 15, 1945, all restrictions on the sale and rental of defense housing were removed by orders of the National Housing Agency and the War Production Board. Shortly thereafter petitioner personally contacted the eight tenants and notified them the houses were for sale. Each tenant was given a three-month option to purchase the house occupied by him. If the tenants did not desire to buy the respective houses occupied by them, the properties were to be sold on the open market. Six of the tenants exercised the option to purchase and the remaining two houses were sold to other purchasers. The houses were sold in February and March of 1946 with the petitioner handling all the negotiations. The mortgages placed on the houses by the petitioner were not in any instance retired by the time the houses were sold. The respective balances unpaid were assumed by the purchasers. The petitioner has never held a real estate dealer's license and has never been a member of any real estate board in Omaha. On petitioner's income tax returns for 1945, 1946, 1947 and 1948 the business of petitioner is stated to be "Building Contractor." The following *352 schedule shows the number of houses constructed by the petitioner, the number of houses he sold, the net rentals he received, and the net profits on houses he sold for each of the years 1944 to 1948, inclusive: Con-
Net Profit
Net
Year
structed
Sold
from Sales
Rentals
1944
13
None
Unknown
Unknown
1945
4
8
$ 4,696.95
$1,534.26
1946
6
10
10,673.68
369.38
1947
4
7
5,059.67
116.71
1948
None
3
2,638.44
624.51
Total
27
28 [1]
$23,068.74
$2,644.86
Petitioner reported the sale of the ten houses as follows: Exp-
Date
ense
Kind of
acq-
Date
Sales
of
Depre-
property
uired
sold
price
Cost
sales
ciation
Gain
6759 Emmet St.
9- 1-44
2- 1-46
$ 5,750.00
$ 4,550.60
$ 133.33
$ 1,332.73
6773 Emmet St.
9- 1-44
2- 1-46
5,750.00
4,550.60
133.33
1,332.73
6771 Emmet St.
9- 1-44
3- 1-46
5,902.85
4,550.60
141.66
1,493.91
6779 Emmet St.
9- 1-44
3- 1-46
5,200.00
4,550.60
141.66
791.063
6787 Emmet St.
9- 1-44
3- 1-46
5,500.00
4,550.60
141.66
1,091.06
6791 Emmet St.
9- 1-44
3- 1-46
5,500.00
4,550.60
141.66
1,091.06
6795 Emmet St.
9- 1-44
3- 1-46
5,673.90
4,550.60
141.66
1,264.96
6783 Emmet St.
9- 1-44
3- 1-46
5,500.00
4,550.60
141.66
1,091.06
4951 Bedford
7-26-45
1-31-46
9,500.00
8,668.08
None
831.92
4955 Bedford
7-26-45
2-15-46
9,300.00
8,946.81
None
353.19
Totals
$63,576.75
$54,019.69
$1,116.62
$10,673.68
*353 Gains
to be
taken
Kind of
into
property
%
acount
6759 Emmet St.
50%
$ 66.36
6773 Emmet St.
666.37
6771 Emmet St.
746.95
6779 Emmet St.
395.53
6787 Emmet St.
545.53
6791 Emmet St.
545.53
6795 Emmet St.
632.48
6783 Emmet St.
545.53
4951 Bedford
415.96
4955 Bedford
176.59
Totals
$5,336.83
The Commissioner determined that all of the properties sold in 1946 were held by petitioner "primarily for sale to customers in the ordinary course of a trade or business" and that the gains therefrom are taxable as ordinary income. Respondent accordingly increased the reported gain of $5,336.83 to $10,673.68. The eight houses which petitioner sold during 1946 which previously had been rented were held primarily for sale to customers in the ordinary course of his business. The houses were so held after October 15, 1945, and throughout the taxable year to date of sale. The two houses which petitioner sold during 1946 which had never been rented were held primarily for sale to customers in the ordinary course of petitioner's business from the date the houses were completed in 1945. Opinion Petitioner completed the *354 construction of eight houses in 1944 and two houses in 1945, under the Federal Housing Administration approved plan. Upon completion of the eight houses in 1944, petitioner rented them to war workers on oral month-to-month tenancies. The two houses constructed in 1945 were not rented or occupied prior to their sale in 1946. Shortly after the restriction on the sale of defense houses was removed, petitioner personally contacted the tenants and notified them the houses were for sale. The eight defense houses constructed in 1944 were sold in February and March 1946. The question in this proceeding is whether the gain from the sale of ten houses during the taxable year is taxable as a long-term capital gain or as ordinary income. The applicable statutes are contained in section 117 (a)[1] and section 117 (j) [1] of the Internal Revenue Code. *355 Petitioner concedes the taxability of the gains on the two houses built in 1945 as ordinary income. We therefore confine ourselves to the eight houses built in 1944. As to these eight houses, petitioner contends that he agreed to comply with Government housing regulations when he requested material priorities; that these regulations permitted him to build the houses here involved for rental purposes only; that he did rent the houses; and that these rental properties were not held primarily for sale to customers in the ordinary course of trade or business but were rather property used in his trade or business for investment and that the gains on the sales are to be treated as capital gains under the provisions of section 117 (j) of the Internal Revenue Code. He also contends, in the alternative, that no complete sale took place in 1946 even though title passed because he is still liable on the mortgages. Respondent maintains that the defense houses in question were held by petitioner primarily for sale to customers in the ordinary course of his trade or business, and, therefore, the gains realized from the sale of such houses are taxable as ordinary income. *356 Whether or not the houses sold by petitioner satisfy the requirements of section 117 (j) (1) (B) depends on the factual situation and the burden is on the petitioner to show that the houses sold during the taxable year were not held primarily for sale to customers in the ordinary course of his trade or business. See Lucille McGah, 15 T.C. 69, vacated and remanded (C.A. 9) 193 Fed. (2d) 662, modification of findings of fact, 17 T.C. 1458. As we explained in Thomas E. Wood, 16 T.C. 213, 227: "There have been numerous decisions concerning whether or not the provisions of section 117 applied to sales of real estate. Each case must be decided on its own facts. * * * it is frequently difficult to draw a line between a situation where a taxpayer is merely holding property for sale and a situation where his activities in connection with the sale of property constitutes the doing of business under the tax statutes * * *" The petitioner's case here is on the facts quite similar to two recent cases considered by this Court, Lucille McGah, supra, and Albert Winnick, 17 T.C. 538, vacated and remanded for additional *357 findings of fact, 199 Fed. (2d) 374. In both those cases we decided that the defense housing erected and sold by partnerships, of which the taxpayers were members, was held primarily for sale to customers in the ordinary course of trade or business, and the gains realized were taxable as ordinary income. On the record here, there is no room for doubt that the petitioner, Reuben Eckstrom, was in the year 1946 engaged in the business of building and selling houses. He had been building and selling houses from 1931 to 1942. During 1942 and 1943 he was a construction worker only because he could not obtain building materials. In September 1943, wartime regulations required a certain portion of new construction to be held for rental purposes as a condition to obtaining material priorities. Petitioner agreed to abide by these regulations in obtaining priorities. We do not doubt petitioner's good faith in entering into such an agreement. But, on the other hand, as soon as petitioner completed the houses, he sold the portion he was allowed to sell. He rented the eight houses he was not permitted to sell on oral month-to-month leases, which fact strongly indicates an intent to *358 have them readily available for sale. In 1946, shortly after the regulations were lifted, he sold the eight houses. We have found that petitioner sold all the other 17 houses he built during the period 1944 to 1948, inclusive, shortly after he completed them. It is significant that petitioner's profit from sales of houses far exceeded his profit from rentals and the record also shows petitioner had only one other rental property in 1946. These facts clearly establish that petitioner, in 1946, was engaged in the business of construction and sale of houses, not the construction and renting of houses. Petitioner places reliance on his agreement with the Government to hold the houses for rental purposes. He cites Latimer-Looney Chevrolet, Inc., 19 T.C. 120 (Nov. 4, 1952; on appeal, C.A. 6), for the holding that property held for sale can be taken from that category and placed in the category of investment property. This interpretation is incorrect. In the cited case, a finding was made that the cars were never held for sale but were at all times capital assets. While it is true that property held for sale can be taken from that category and placed in the category of investment *359 property, the converse is also true. The court said in Rollingwood Corporation v. Commissioner, 190 Fed. (2d) 263: "While the purpose for which the property was acquired is of some weight the ultimate question is the purpose for which the property is held. * * *
"Suppose the taxpayer in the instant case intended to rent the houses for as long as he was required to do so under existing regulations and then to sell them. Or suppose his intention was to pursue whichever of these activities proved to be the most profitable, that is, if the rental market were good he would continue to rent but if the sales market were high he would sell. In either of these suppositions we think it is fair to say that one of the essential purposes (in acquiring or holding the houses) is the purpose of sale. Under such circumstances, if the taxpayer does dispose of the houses by sale, is it within the legislative purpose to allow him to treat the proceeds of these sales as a capital gain? We think not." The eight houses here in issue were held for sale to customers in the ordinary course of business in the taxable year. See also Victory Housing No. 2, Inc., 18 T.C. 466 (on *360 appeal, C.A. 10). We have examined the cases cited by petitioner and they are distinguishable on their factual situations. For the most part, these cases present circumstances where the sales of defense houses were isolated transactions or where the petitioners clearly indicated they were primarily landlords, holding real estate for investment. Petitioner also contends that the houses were not sold, even though title passed, because he is still liable on the mortgages. We find no merit in this contention. Title and possession passed to each purchaser in 1946 and the purchaser assumed the mortgage obligation. This constituted a completed sale in 1946. E. Alice James, 1 B.T.A. 548. In Commissioner v. Union Pac. R. Co., 86 Fed. (2d) 637, the court said: "A closed transaction for tax purposes results from a contract of sale which is absolute and unconditional on the part of the seller to deliver to the buyer a deed upon payment of the consideration and by which the purchaser secures immediate possession and exercises all the rights of ownership. The delivery of a deed may be postponed and payment of part of the purchase price may be deferred by installment *361 payments; but for taxing purposes it is enough if the vendor obtains under the contract the unqualified right to recover the consideration. * * *" For the reasons above stated, we find no error in the respondent's determination. Decision will be entered for the respondent. Footnotes
1. One house sold was acquired on December 30, 1925.↩
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), or an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941 on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue, or real property used in the trade or business of the taxpayer; * * *
(j) Gains and Losses from Involuntary Conversion and from the Sale or Exchange of Certain Property Used in the Trade or Business. - (1) Definition of Property Used in the Trade or Business. - For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable. (2) General Rule. - If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For the purposes of this paragraph: (A) In determining under this paragraph whether gains exceed losses, the gains and losses described therein shall be included only if and to the extent taken into account in computing net income, except that subsections (b) and (d) shall not apply. (B) Losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion.↩