WALTER R. CRABTREE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36284, 36285, 36286, 36287. Promulgated July 22, 1953.

*Hugh R. Dowling, Esq.,* for the petitioners.
*James R. Harper, Jr., Esq.,* for the respondent.

[1] The following proceedings have been consolidated:

| Petitioner | Docket No. | Year |
| --- | --- | --- |
| Walter R. Crabtree | 36284 | 1947 |
| Geraldine P. Crabtree | 36285 | 1947 |
| Walter R. and Geraldine P. Crabtree | 36286 | 1948 and 1949 |
| Walter R. Crabtree Company | 36287 | Fiscal year ending Mar. 31, 1950 |

OPINION.

RICE, *Judge:* In order for the petitioners to overcome the determination of the respondent as set forth in the deficiency notices, it is incumbent upon them to sustain the burden of proving that the houses and the unimproved real property involved were not held primarily for sale to customers in the ordinary course of trade or business. *Greene* v. *Commissioner*, 141 F. 2d 645 (C. A. 5, 1944), certiorari denied 323 U. S. 717; *Commissioner* v. *Boeing*, 106 F. 2d 305 (C. A. 9, 1939), certiorari denied 308 U. S. 619. In similar cases involving a determination of whether gain from the sale of property should be accorded capital-gains treatment or should be reported as ordinary income, we have emphasized that this is a question of fact. *King* v. *Commissioner*, 189 F. 2d 122 (C. A. 5, 1951), certiorari denied 342 U. S. 829 (1951).; *Rubino* v. *Commissioner*, 186 F. 2d 304 (C. A. 9, 1951), certiorari denied 342 U. S. 814 (1951). In making that analysis, we have recognized that no single test is decisive. *King* v. *Commissioner, supra.* We have looked at the purpose for which the property was acquired, whether for sale or for investment; at the frequency of sales; at the nature and extent of taxpayer's business; and at the activity of the taxpayer and those acting for him, or on his instructions. We have indicated that the test which deserves greatest weight is the purpose for which the property was held during the period in question. *Carl Marks & Co.*, 12 T. C. 1196 (1949).

The evidence is clear in this case that the nature and extent of petitioner's business puts him in the dual role of both a dealer and an investor in real estate. We recognized such a dual role in *Nelson A. Farry*, 13 T. C. 8 (1949), where we said:

a dealer can also be an investor, and, where the facts show clearly that the investment property is owned and held primarily as an investment for revenue and speculation, it is classed as a capital asset and not property held "primarily for sale to customers in the ordinary course of trade or business."

Respondent contends that the sale of the remaining units of the defense-housing project is similar to a long list of cases dealing with the identical question presented here; that the houses were built because of the urgent need for housing for defense workers; and that subsequent sale of them was from the beginning always contemplated. We think the evidence is to the contrary. Petitioner, over the entire course of his activity in the real estate business, has demonstrated a consistent purpose to acquire and hold rental investment property. Admittedly his holdings of this type of property during many of the early years were not large, but neither were his activities as a builder and developer. By 1950, however, his extensive holdings of rental property, compared to his complete inactivity as a builder and seller of single-dwelling houses, corroborates the other evidence in this record of the dual role of dealer and investor played by these petitioners during the taxable years.

We do not think that the method by which petitioner acquired single-dwelling rental units changes their status as investment property. As a developer, he was building houses on an extensive scale from 1940 to 1944. As an investor, he was selecting and holding the best units for his rental investment portfolio.

It is true that some units in petitioners' defense-housing project were sold soon after completion. But that some were sold and others rented does not change the primary reason for holding the latter. Rentals were on a month-to-month basis, no effort was made to sell, no advertisement or "for sale" signs were placed on the premises, and separate bookkeeping entries were made for the rental property. Substantially all of the units were sold within a short period of time, indicating petitioner's intent to liquidate these assets and transfer his investment holding to another type of property.

Respondent has cited several cases involving the sale of defense-housing projects decided by this and other courts where it was held that the gain therefrom should be treated as ordinary income. *King* v. *Commissioner, supra; Rollingwood Corporation* v. *Commissioner,* 190 F. 2d 263 (C. A. 9, 1951); *Lucille McGah,* 15 T. C. 69 (1950), remanded 193 F. 2d 662 (C. A. 9, 1952), rehearing 17 T. C. 1458 (1952), on appeal C. A. 9, June 5, 1952; *Rubino* v. *Commissioner, supra; Albert Winnick,* 17 T. C. 538 (1951), remanded 199 F. 2d 374 (C. A. 6, 1952); *Victory Housing No. 2, Inc.,* 18 T. C. 466 (1952), reversed 205 F. 2d 371 (C. A. 10, June 12, 1953). We think those cases are clearly distinguishable from the instant case.

Running through those cases are elements absent from the instant case, namely, an aggressive effort made to sell defense-housing units; leases containing purchase options; the purpose of sale being to acquire additional capital to build more houses for sale; the taxpayer's

previous history of being exclusively in the business of building houses for sale; income from sales far exceeding income from rents during the period in question; a clear and distinct intention on the part of the taxpayer to change the purpose of holding the houses for rent to holding them for sale. In none of those cases do we find the continuity of intent to acquire and hold rental investment property extending over a period of many years, and a definite plan for so doing, as we find on the part of the petitioners in this case.

The sale by petitioners of the remaining units of the defense-housing project does not convince us that the houses were held primarily for sale to customers during the period in question. Petitioner has made clear his intent to acquire rental investment property. That he sold single-dwelling rental units and immediately thereafter constructed and held multiple-dwelling rental units does not alter the essential purpose for which both types were acquired and held.

In the instant case, to reach the conclusion for which respondent contends would be tantamount to saying that a dealer in real estate could never sell a defense-housing project and accord capital-gains treatment to such profit as may arise therefrom. To so hold would be a clear usurpation of the legislative prerogative. For nowhere does respondent point to nor can we find any evidence of Congressional intent to treat dealers in real estate, who sell investment property, differently from dealers of another sort. In *Carl Marks & Co., supra*, we allowed a security dealer in 1941 to take from his dealer's account certain securities and place them in an investment account. The following year, more securities were added to the investment holdings. The holdings in each account were carefully separated as were accounting entries pertaining thereto. In 1942, when some of the investment holdings were sold, we allowed capital-gains treatment of the profits therefrom. We see no such clear dissimilarity in that case and this, except in the kind of property dealt in, to warrant our according capital-gains treatment in the one and not the other.

Petitioner purchased the San Jose lot for his personal home site. He did not sell this lot until he purchased another nearby on which he built his present home. We think this clear evidence that this property was acquired, and held as an investment, and that its sale was the sale of a capital asset.

We think petitioners have failed to sustain the burden of proof sufficient to overcome the respondent's determination that gain from the sale of the Stanley, Paschal, and Cardwell lots; the unidentified lot sold in 1948; and the lots transferred to the Crabtree Lumber Company should be treated as ordinary income. Petitioner admitted, in fact, that the Stanley and Paschal lots "probably should have been a regular gain."

*Decision will be entered under Rule 50.*