Robert **B. GOTFREDSON** and **Charlotte B. Gotfredson**, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 12134.

United States Court of Appeals, Sixth Circuit.

Dec. 27, 1954.

Thomas F. Chawke, Detroit, Mich. (Nathaniel W. Gold, Detroit, Mich., on the brief), for petitioners.

C. Guy Tadlock, Washington, D. C. (H. Brian Holland, Ellis N. Slack and Davis W. Morton, Jr., Washington, D. C., on the brief), for respondent.

Before McALLISTER, MILLER and STEWART, Circuit Judges.

MILLER, Circuit Judge.

The petitioners, who filed joint income tax returns, seek a review of rulings of the Tax Court adjudging deficiencies in income taxes for the years 1948 and 1949 in the amounts of $5,922.90 and $4,894.32 respectively. The issue presented is whether gain realized in the taxable years in question from the sale of dairy cattle held by the petitioners for six months or more constituted ordinary income or capital gain.

The principal facts, which are not in dispute, were found by the Tax Court as follows. Since about 1940, the petitioner, Robert B. Gotfredson, has owned and operated what is known as the "Gotfredson Farms," which consists of about 1,500 acres at Grass Lake, Jackson County, Michigan. The principal source of income from the operation of the farm has been from the sale of dairy products. During the years with rainfall normal for the growth of feed and pasture, the farm is capable of maintaining about 325 head of cattle.

The petitioner early adopted the policy of building up a herd of top-grade milk producing cattle of the Brown Swiss breed to the point of maximum operational efficiency on the acreage available. The Brown Swiss breed is considered primarily a milk producer and not a beef producer. In maintaining and improving the efficiency of his dairy herd the petitioner culls out the less desirable animals, replaces the older animals whose production has dropped with younger animals raised on the farm, and from time to time acquires new sires from other herds. Of the animals born on the farm each year the petitioner intends to retain as many as he thinks he can use. However, his aim is to retain the better ones and to cull out the poorer ones in order to improve the quality of his herd. At various stages of development the cattle are judged by predetermined standards, and the poorer animals which fail to measure up to such standards are sold. These standards are stated in detail in the Tax Court's findings, but need not be repeated here.

Before a heifer can become a milker she has to drop a calf. Petitioner's heifers were first bred between 15 and 18 months of age. With a gestation period of approximately nine months, they would be from 24 to 27 months of age at the time of their first calving. Unless they then produced at least approximately 300 pounds of butter fat annually or were of lines of good producers of butter fat, they were disposed of. The bulls were usually bred at about 15 months of age. Not until the offspring of a bull begins milking is petitioner finally able to determine whether a bull meets petitioner's standards and is to be retained.

The Michigan Farmer is a farm magazine published twice monthly and has a circulation comprising a major-

ity of the farmers in Michigan. In a section of that magazine entitled "Breeders' Directory" the petitioner advertised Brown Swiss bulls for sale twice monthly during the months of October 1948 through March 1949, the months of May 1949 through August 1949, and the last three months of 1949. In 1948, he advertised in nine issues of the Brown Swiss Bulletin, which is published monthly in the interest of improving Brown Swiss cattle as a breed. In 1949, he advertised in the Prairie Farmer, a farm magazine published in Chicago, Illinois. He spent $337.00 in 1948 and $273.90 in 1949 in thus advertising his cattle for sale.

The stationery used in connection with petitioner's farm carried the following heading:

Gotfredson Farms
Grass Lake, Michigan
Telephone, Grass Lake 5252
Breeders of fine Brown Swiss cattle.

During 1948 and 1949, some of the cattle raised on the farm were sold before attaining the age of six months. Gains from these sales were reported by the petitioner as ordinary income and are not involved in this case. Other cattle were sold after being retained beyond that age, and the gains from these sales were reported by petitioner as long-term capital gains. It was the Commissioner's contention that such gains constituted ordinary income, which resulted in the deficiencies herein involved.

In the case of a taxpayer, other than a corporation, only 50 per centum of the gain recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain and net income, if the capital asset has been held for more than 6 months. There is excluded from the definition of "capital assets" property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. § 117(a) (1), § 117(b), In-ternal Revenue Code, 26 U.S.C. § 117 (a) (1), (b). In 1942 § 117(j) was added, which treated as gains from the sale of capital assets certain gains resulting from the sale of certain property used in the trade or business. But this amendment expressly excluded from such transactions "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Accordingly, without regard to the 1951 amendment, hereinafter referred to, if the cattle sold in 1948 and 1949 was property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, the resulting profit or gain must be treated as ordinary income.

The Tax Court held that under the petitioner's standards cows under 36 months of age and bulls under 48 months of age could not have attained the minimum standards for retention; that cows which were 36 months of age or more and bulls which were 48 months of age or more at the time of sale were held by the petitioner for dairy purposes and not primarily for sale in the ordinary course of trade or business, and that the gain on their sale was taxable at capital gain rates; but that cows and heifers which were less than 36 months of age and bulls which were less than 48 months of age at the time of sale were not held by petitioner for dairy purposes, but instead were held for sale to customers in the ordinary course of trade or business, and that the gain on their sale was taxable as ordinary income. The deficiencies resulting from these rulings are what we are asked to review.

Prior to 1951 there was considerable dispute between the Commissioner and farmers with regard to the application of Sec. 117(j) to sales of livestock. The Commissioner's contention that such sales were not sales of capital assets was rejected by the Courts on several occasions. See Albright v. United States, 8 Cir., 173 F.2d 339; United States v. Bennett,

5 Cir., 186 F.2d 407; Miller v. United States, D.C.Neb., 98 F.Supp. 948; Fawn Lake Ranch Co. v. Commissioner, 12 T.C. 1139; Flato v. Commissioner, 14 T.C. 1241. In 1951 Congress amended Section 117(j) to make it clear that " 'property used in the trade or business' * * * includes livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months[1] or more from the date of acquisition", but not including poultry. Petitioners rely upon the foregoing cases and the 1951 amendment in support of their contention that as a matter of law the sales in question are to be treated as sales of capital assets.

The purpose of the 1951 amendment was chiefly to clarify the issue and to recognize by statutory enactment the rulings which had been made by the Courts as hereinabove indicated. We do not think it broadened the rule of those cases. We do not give to the the words "regardless of age" the construction urged by the petitioner that all new born heifers and bulls are treated as capital assets from the time of birth. We construe it as meaning that the sale of cattle from the herd, after having served in the herd, is the sale of a capital asset, even though the animal is still comparatively young, has not exhausted its usefulness, and is sold at a younger age than is usually the case. Such construction is consistent with the purpose of the amendment to settle the Commissioner's contention to the contrary, and as made by him in the cases referred to. The amendment still requires that the cattle be "held by the taxpayer for * * * dairy purposes."

We are of the opinion that the ruling in the foregoing cases is not applicable to our present problem. In those cases the taxpayer culled out from his herd of cattle certain old or inferior animals who had served as part of the herd over a period of time, and replaced them with younger animals. We agree that the cattle so sold and replaced had been held for breeding or dairy purposes. They had actually been used over a period of time for that purpose, and their *ultimate* sale did not destroy that fact. The statute refers to property held *"primarily"* for sale. In the present case the cattle sold had not yet qualified to become a part of the herd. This distinction is referred to in Fox v. Commissioner, 4 Cir., 198 F.2d 719, 723, upon which case the Commissioner strongly relies. Allowing for the immaterial difference of a breeding herd in that case and a dairy herd in the present case, we consider the cases closely parallel. The Court held that the young cattle which were sold before they became a part of the breeding herd were not held for breeding purposes within the meaning of Section 117(j), Internal Revenue Code.

In this case, as in that case, the evidence shows that it was the intention of the taxpayer at all times to sell a substantial portion of the new-born animals, and that such intention was carried out before they became a part of the herd. As shown by the advertising and by the letterhead, the sale of a certain portion of the young cattle was a regular part of his business. As pointed out in the Fox case, although the cow and the bull which produced the calf may be a part of the herd and a capital asset when sold, the calf and the milk are not property used in the trade or business but are instead the produce of such property. Whether the calves will be sold or held for dairy purposes is not decided until many months later.

Petitioners contend that the Tax Court's ruling incorrectly construes the words in Section 117(j) "held by the taxpayer for * * * dairy purposes" as meaning "used" by the taxpayer for dairy purposes, and that it is not necessary under the statute that the calves and bulls be actually used for dairy

---

1. Six months for the taxable years in question.

purposes. We agree that the ultimate use of the young animals is evidence of the purpose for which they were held, but that it is not the only test, and that young cattle *could* be held for dairy purposes even though not ultimately so used. Accidents, sickness, weather and farm conditions, see Pfister v. United States, D.C., 102 F.Supp. 640, financial considerations, and other factors might cause a change of purpose before actual use. But we do not agree that the ruling was based exclusively on the fact that the animals were not actually used for dairy purposes. Other facts were also considered by the Tax Court in determining that the animals were not "held" for dairy purposes.

██ We recognize that the Court of Appeals for the Second Circuit in McDonald v. Commissioner, 214 F.2d 341, has recently reached a different result from that reached in Fox v. Commissioner, supra. If this matter was before us in a trial de novo the reasons given for the ruling in that case would be persuasive. The two cases represent different conclusions from similar factual situations, both reasonably arrived at. But, eliminating the legal issues involved, hereinabove discussed, the basic question remaining is one of fact. Dougherty v. Commissioner, 6 Cir., 216 F.2d 110; Winnick v. Commissioner, 17 T.C. 538; Id., 6 Cir., 199 F.2d 374; Home Co. v. Commissioner, 10 Cir., 212 F.2d 637; Rider v. Commissioner, 8 Cir., 200 F.2d 524; see also, United States v. O'Neill, 9 Cir., 211 F.2d 701. We are unable to say that the facts in this case do not support the Tax Court's finding that the heifers and bulls sold by the taxpayer before they were accepted into the herd were not held for dairy purposes, but instead were held for sale to customers, or that such finding is clearly erroneous. Unless clearly erroneous, the finding is binding upon us. Sec. 1141(a), Title 26 U.S. Code; Rule 52(a), Rules of Civil Procedure, 28 U.S.C.; Rider v. Commissioner, su-

pra; Schwartz v. Commissioner, 7 Cir., 185 F.2d 760, 763–764. See United States v. United States Gypsum Co., 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746; Miller v. Commissioner, 6 Cir., 183 F.2d 246, 252.

The judgments are affirmed.