Austin COLE and Margaret Cole,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. No. 2756.

United States District Court
E. D. Illinois.

Nov. 19, 1955.

Don O. Russell, St. Louis, Mo., Edward J. Murphy, East St. Louis, Ill., for plaintiffs.

C. M. Raemer, U. S. Atty., and Edward G. Maag, Asst. U. S. Atty., East St. Louis, Ill., for the United States.

WHAM, Chief Judge.

Plaintiffs, Austin Cole and Margaret Cole, hereinafter referred to as "taxpayers", filed this action to recover personal income taxes paid for the taxable year ending December 31, 1948. After the filing of the original joint return for the said year, taxpayers filed an amended return and a claim for refund for income taxes erroneously paid, founded upon the fact that they had inadvertently reported the same income twice upon their 1948 tax return. An examination of the returns by defendant's examining officer, Howard F. Ludwig, revealed that the taxpayers were correct in their contention and that a refund was due the plaintiffs. However, this adjustment was partially offset by the examining officer who determined that plaintiffs' treatment of certain receipts from the sale of cattle as capital income was incorrect and that said receipts should properly be classified as ordinary income. The difference in the amount of tax resulting from the divergent theories is $3,581.35, which is the amount the taxpayers seek to recover in this action.

A trial was had before the court and after lengthy extensions of time, written briefs and arguments have been filed for the respective parties.

From the evidence presented at the trial it appears that the taxpayer, Aus-

tin Cole, in addition to other business activities, owned and operated the Knollwood Farm at Chester, Illinois. Beginning in 1931 he started in the cattle breeding and dairy business and in the ensuing years by selective breeding succeeded in establishing a dairy herd of registered Jersey cattle which was recognized throughout the Middlewest as very excellent. Milk produced by the herd was sold by the taxpayers, the receipts listed as ordinary income by the taxpayers and the operating expenses of the farm were deducted from this amount of income.

The facilities available at Knollwood Farm were limited and proper care could be provided for a maximum of only seventy-five to one hundred head of cattle at any one time. Fewer could be cared for in the winter than in the summer. The facilities available for caring for producing milk cows were sufficient to maintain an average of only twenty-five to thirty milking cows. To maintain the milk producers in the herd at that strength it was necessary to maintain some spares also.

When the herd, through natural increases, exceeded the maximum number which could be cared for on the farm it was necessary to dispose of some of the cattle. This was accomplished by a public auction sale usually held at the farm. Such a sale was conducted by the taxpayers in September 1948. Because of the high quality of the cattle to be sold the sale was advertised in the Jersey Bulletin, a magazine circulated nation wide among persons interested in Jersey cattle, and a detailed catalog was prepared for distribution to prospective purchasers giving full information regarding the pedigree and production figures of the subject of the sale and its ancestors.

At the sale in September 1948, the taxpayers sold forty-six animals for a total price of $27,284.17. Of the animals sold two bulls and sixteen cows were over two years of age. No question is raised by the defendant as to the taxpayers' right to consider the receipts from the sale of these animals as capital gain. However, the receipts from the sale of fourteen bulls which had never been used for breeding purposes and from fourteen heifers which had never been bred, all of which were less than twenty-three months of age, were disallowed by defendant as capital gain and were considered to be ordinary income. Three of the animals sold in the latter group were under six months of age and the taxpayers concede in their computation of refund due that the receipts from the sales of these three calves are ordinary income and not subject to capital gain treatment.

A review of the income of Knollwood Farm from the sale of milk and from the sale of cattle from 1940 through 1952 discloses the following figures:

| Year | Milk Sales | Cattle Sales |
|------|-----------|--------------|
| 1940 | $ 1,637.19 | $ 1,145.04 |
| 1941 | 3,451.14 | 1,678.80 |
| 1942 | 5,371.96 | 3,224.65 |
| 1943 | 8,180.07 | 5,581.83 |
| 1944 | 9,332.66 | 7,306.84 |
| 1945 | 11,252.16 | 6,335.76 |
| 1946 | 10,600.86 | 28,538.51 |
| 1947 | 10,694.32 | 5,575.56 |
| 1948 | 12,548.91 | 27,284.17 |
| 1949 | 6,257.39 | 2,244.38 |
| 1950 | 9,904.91 | 4,756.39 |
| 1951 | 11,283.12 | 6,676.56 |
| 1952 | 4,947.46 | 37,444.36[1] |

1. Entire herd sold May 26, 1952.

In computing the net income or loss from farm operations for the year 1948 the taxpayers considered the receipts from the sale of milk as ordinary income. From this figure of $12,548.91 he deducted the farm expenses of $26,626.04 which resulted in a loss of $14,041.32 for the year. Income received from the sale of cattle was not entered as income from farming operations but was considered as sales of capital assets and treated as long term capital gain.

The question to be determined by this court, simply stated, is this: Was the sale of the bulls and heifers which were

over six months of age and not over twenty-three months of age, a sale of a capital asset?

Sections 117(a) (1), 117(b), Title 26, U.S.C.A. provide that a taxpayer, other than a corporation, may take into account only fifty per cent of the gain recognized upon the sale or exchange of a capital asset in computing net capital gain and net income if the capital asset has been held for more than six months. Excluded from the definition of "capital asset" is property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Section 117(j) (1), defined the term " 'property used in the trade or business' " as being property of a character which is subject to allowance for depreciation, held for more than six months, which is not properly included in the yearly inventory, and which is not held primarily for sale to customers in the ordinary course of his trade or business.

In 1951 Congress amended Section 117 (j) (1) by Section 324, Revenue Act of 1951, to include within " 'property used in the trade or business' ", "livestock, regardless of age, held by the taxpayer for draft, breeding, or dairy purposes, and held by him for 12 months or more from the date of acquisition." This provision was made retroactive to tax years beginning after December 31, 1941 except that the holding period was six months instead of twelve months for all years beginning prior to December 31, 1950. From the legislative history of this amendment it appears that Congress expected a revenue loss under this provision and it was specifically stated "that the term 'livestock' in this new sentence should be given a broad, rather than a narrow, interpretation". U.S. Cong. & Adm.Serv.1951, Vol. 2, page 1813. Thus it may be concluded that this amendment was enacted with a view toward granting a tax benefit to livestock farmers.

In the instant case the taxpayers contend that their primary business was the dairying business; that the extensive testing program which they followed was done to establish certain animals in their herd as "superior", "excellent", etc; that the sale of calves or older animals was merely incidental to the business of producing milk which was necessitated by the natural increase in the herd and the lack of adequate facilities to care for the additional animals; and that all cattle were bred in order to produce additional animals for the breeding and dairy herd, and all calves born were held for breeding and dairying purposes and not primarily for sale to customers in the ordinary course of the plaintiffs' trade or business.

The defendant contends that the taxpayers were in the business of selling purebred Jersey cattle; that the income from the sale of milk was insufficient to cover the cost of operating the farm even after eighteen years of operation and that on the basis of milk production alone the taxpayers were operating the farm at a substantial loss; that the receipts from the sale of cattle were greater for the period from 1940 to 1952 than the receipts from the sale of milk; that the extensive testing program carried on by the taxpayers was essential to show the high quality of the cattle which were offered for sale; that extensive advertising was undertaken to announce the sale held by the taxpayers in 1948 and that an elaborate catalog was printed and distributed to prospective purchasers; and that sales of this type were had periodically by the taxpayers.

Prior to the 1951 amendment the Commissioner of Internal Revenue and livestock farmers were at odds as to the treatment to be given to sales of livestock under Section 117(j). Counsel for each of the parties have cited two cases which have been decided by the Courts of Appeal since the 1951 amendment.

In the case of McDonald v. Commissioner of Internal Revenue, 2 Cir., 214 F.2d 341, the Court of Appeals for the Second Circuit was faced with the following factual situation: The taxpayer was the owner of a dairy and breeding herd of purebred Guernsey cattle which,

through selective breeding, had become recognized as one of the best herds in the country. The taxpayer culled out as rapidly as possible those calves which did not measure up to the high standards of his herd. He did not keep any definite number of calves each year but retained only those that proved suitable. Initially the taxpayer retained all the calves, with the hope that they would measure up to the standards set for the herd. It was clear and predictable, however, that each year many of the calves would be found unsuited and would be culled and sold. The Tax Court held that the young animals were held for sale up to the point where their breeding qualities had been tested by examination of their offspring, and relying upon Fox v. Commissioner of Internal Revenue, 4 Cir., 198 F.2d 719, fixed this period of time at twenty-four months. Therefore, the proceeds from cattle sold earlier were held to be ordinary income.

The Court of Appeals reversed the Tax Court 17 T.C. 210 and held that an animal which had been held for more than six months before being culled out had become part of the dairy and breeding herd until it had been found to be unfit. The court used the following language 214 F.2d at page 343:

"Hence we cannot accept the Tax Court's ruling that the animals must be 24 months old, the age at which they have presumptively had offspring. Equally we disapprove the view that an animal is held for breeding purposes only if there is an expectation and intention that it produce offspring. Life is replete with situations (advertising, war, reproduction) where many are employed in the hope that one will succeed. Yet the purpose subserved by the many is clear. This does not mean that every farmer can obtain the benefit of the capital gains provision for his entire calf crop merely by selecting one of the better looking animals every time he needs a replacement for his producing herd. This taxpayer, however, has made a thoroughly convincing record that his retention of calves was a necessary factor in building his champion herd. He is entitled to the benefit of I.R.C. § 117(j) (1) in its new and revised form."

In the case of Gotfredson v. Commissioner of Internal Revenue, 6 Cir., 217 F.2d 673, the taxpayer owned and operated a dairy farm and adopted the policy of building up a herd of top grade milk producing Brown Swiss cattle to the point of maximum efficiency on the acreage available. In maintaining the herd the taxpayer culled out the less productive cows and replaced them with younger animals raised on the farm. In so doing he retained as many of the younger animals as he could use, at all times selecting the better ones and culling out the poorer animals in order to improve the quality of the herd. The poorer animals which failed to measure up to his standards were sold. During the years 1948 and 1949 cattle were sold that were over the age of six months and the receipts from the sale of these cattle were reported as capital gains by the taxpayer. The commissioner disallowed the capital gains treatment and contended that said receipts were ordinary income. The Tax Court found that cows that were more than thirty-six months of age and bulls that were more than forty-eight months of age were held by the taxpayer primarily for dairy purposes and that the receipts from the sale of such animals were properly considered as capital gain, but that animals that were less than the stated ages at the time of sale were not held by the taxpayer for dairy purposes but were held for sale to customers and the receipts from the sale of such animals were taxable as ordinary income.

The Court of Appeals for the Sixth Circuit affirmed the ruling of the Tax Court and cited the case of Fox v. Commissioner, supra. The court also noted that the Court of Appeals for the Second Circuit in the McDonald case, supra, had reached a different result from that reached in the Fox case, and stated that

the reasons given for the ruling in the McDonald case would be persuasive if the present case was before the court in a trial de novo, but since the basic issue was one of fact which the trial court had decided they were bound to follow the findings of the trial court since it could not be said that the findings were not supported by facts or were clearly erroneous.

These two cases represent different conclusions reached by two different courts from similar fact situations.

The case of Fox v. Commissioner of Internal Revenue, supra, cited in the two cases discussed above, was decided by the Tax Court prior to the enactment of the 1951 amendment. In that case the taxpayer was the owner of a herd of Aberdeen Angus cattle and used the higher quality calves produced from the herd to increase and replace the breeding herd. However, many of the registered calves were sold to other breeders before they produced offspring, and the taxpayer contended that these were a part of the herd and that the receipts from the sale of the same were subject to treatment as capital gain. The Tax Court held that the animals did not become a part of the breeding herd until they had produced calves and placed the age at which the animals became a part of the herd at twenty-six months for heifers and thirty-four months for bulls.

The Court of Appeals in affirming the Tax Court's decision after the 1951 amendment had been enacted, held that the amendment wording " 'regardless of age' " did not affect the conclusion reached by the Tax Court and stated that the important fact to be considered is not the age of the animals but the purpose for which they are held.

The case of Biltmore Company v. United States, 129 F.Supp. 366, decided March 8, 1955 by the District Court for the Western District of North Carolina, dealt with a similar problem. In that case the District Judge stated that the McDonald case was similar in facts to the case before him and the language of the court in that case most persuasive, but under the doctrine of stare decisis he adopted the view of the Court of Appeals for the Fourth Circuit in the Fox case and held that heifers which had not reached the age of twenty-four months and bulls which had not reached the age of eleven months were not part of the dairy herd and did not constitute a capital asset within the capital gains statute pertaining to property used in trade or business for income tax purposes.

The Tax Court in the case of Diamond A. Cattle Co. v. Commissioner of Internal Revenue, 21 T.C. 1, 6, followed the decision in the Fox case and held that unbred heifers were not a part of the breeding herd and the gain on the sale of said heifers was ordinary income.

In the reply brief counsel for taxpayers has cited three cases decided by the Tax Court upholding the right of the taxpayer to consider the gain from sale of cattle over six months of age as capital gain.

The case of McDonald v. Commissioner, 23 T.C. 1091, was a case involving a subsequent year to the year involved in the case before the Court of Appeals for the Second Circuit, and as the facts were generally the same the Tax Court's opinion followed the holding in the Court of Appeals decision.

In Estate of Smith v. Commissioner of Internal Revenue, 23 T.C. 690, the taxpayer had made a practice of separating the young calves into two groups, those that were to be sold and those which were to be used as breeding stock. As the calves matured the ones in the group to be used as breeding stock were examined and any that did not meet the high standard of the taxpayer's herd were placed in the group for sale. During the period of time involved certain animals had been sold from the group designated as the breeding stock, but these sales were made only in exceptional or unusual cases. The Tax Court held that the segregation of the calves by the taxpayer was a criterion by which it could be determined that certain animals

were to be sold in the usual course of business and others were to be kept for breeding stock, and that the sales from the breeding group were properly considered as a sale of a capital asset even though they had not reached the age at which they would be used to produce offspring.

The case of Bartlett v. Commissioner of Internal Revenue, T.C.Memo.1955–259, was a case in which the facts were essentially the same as in the Smith case, supra. Here, too, the calves had been selected for breeding purposes and separated from the other calves, and would not have been sold except for unusual circumstances. The Tax Court held that the sale of animals from the selected calves placed in the breeding group was a sale of a capital asset.

■ Under the sections of the statute involved in this case it becomes essential to determine the purpose for which the animals were to be used, i. e., for breeding purposes or for sale. This question is one of fact. Doughtery v. Commissioner of Internal Revenue, 6 Cir., 216 F.2d 110; Stockton Harbor Industrial Co. v. Commissioner of Internal Revenue, 9 Cir., 216 F.2d 638; United States v. O'Neill, 9 Cir., 211 F.2d 701.

■ Reviewing the facts present in the instant case it appears that considerably more income was received from the sale of cattle than from milk production over a period of years; that the farm operations were unprofitable if the income from the sale of milk was the only income credited to the farm operation; that there was no apparent effort to alter the method of operation to make the farm a profitable operation from the sale of milk alone; that high type cattle were sold by the taxpayers and not merely the culls from the calves or the producing herd; that the sale of cattle was advertised widely and at considerable expense; and that extensive record keeping and tests increased the value of the cattle in the producing herd and the calves which were their offspring. Although any one of these factors alone might be insufficient to support a finding that the taxpayers were selling animals in the usual course of business, taken together they are convincing proof of the double purpose of the taxpayers to produce high type Jersey cattle for sale as well as to produce milk for sale, both in regular course of business.

In this case the facts do not show, as in the McDonald case, that the taxpayers, as early as feasible, culled from the calves those which did not measure up to the high standards of their herd. On the other hand, it would appear here that they selected the animals to be sold not with a single eye to the improvement of the producing herd within the possibilities of their limited facilities, but rather to the end, without detracting from the excellence of their producing herd, that the sales attract as many bidders and bring as high prices as possible for the cattle sold. The milk production was not the single purpose of the herd. The herd served the double purpose of producing milk for sale and in producing calves for sale in the regular course of business. The young cattle so sold had not become capital assets because they had not become part of the producing herd.

Judgment will be for the defendant.

Order accordingly.