OPINION. Nice, Judge: Section 117 (j) of the 1939 Code, as amended by section 324 of the Revenue Act of 1951, includes, within the definition of property used by a taxpayer in his trade or business, livestock held for breeding purposes. The section further provides that the gain from the sale of animals so held is taxable at capital gains rates rather than as ordinary income. Whether a taxpayer holds cattle for breeding purposes is a question of fact. Biltmore Company v. United States, 228 F. 2d 9 (C. A. 4, 1955); Gotfredson v. Commissioner, 217 F. 2d 673 (C. A. 6, 1954), affirming Memorandum Opinion of this Court dated August 31, 1953, certiorari denied 350 U. S. 846 (1955); McDonald v. Commissioner, 214 F. 2d 341 (C. A. 2, 1954), reversing 17 T. C. 210 (1951); Fox v. Commissioner, 198 F. 2d 719 (C. A. 4, 1952), affirming 16 T. C. 854 (1951); James M. McDonald, 23 T. C. 1091 (1955); Estate of C. A. Smith, 23 T. C. 690 (1955). The respondent determined that the livestock in question here were not so held. That determination is presumptively correct and we think the petitioners have failed to show that they were not in the business of selling cattle and that the cattle here in issue were not held for sale to customers in the ordinary course of such business. Petitioner’s manager, Eae Giersdorf, was the principal witness who testified at the hearing. She was thoroughly conversant with the operation of petitioner’s ranch, and, pursuant to discussions with petitioner and acting on instructions from him, was familiar with his objectives in operating the ranch. Her testimony, however, was contradictory in several important aspects and in direct conflict with other evidence in the record. She testified first, that petitioners had only one herd of cattle and that the herd was exclusively a breeding herd which petitioner intended to build to 1,500 head before he actually began selling breeder cattle to other livestock breeders. This testimony seems to us wholly incompatible with the extensive advertising which petitioner did prior to and during the years in issue. We are satisfied that during the years in issue, as well as before, petitioner was actively engaged in the business of selling Aberdeen-Angus cattle. The witness’s testimony, to the effect that when a prospective purchaser came to the farm he was free to select from the one herd any cattle which he wished, is wholly inconsistent with the notion that petitioner had for sale only culls and inferior animals which could not be incorporated into his superior quality herd or animals which had outlived their usefulness as breeders. We think it also significant that petitioner’s inventory of cattle continually declined during the years in issue rather than increased, as was his alleged intention according to the testimony of witness Giersdorf. The petitioners have attempted to draw a close parallel between the facts of the case here with those in James M. McDonald, supra, and Estate of C. A. Smith, supra, wherein we found that the livestock there in issue were, in fact, held by the taxpayers as a part of their breeding herds, and that the gain from the sale of such livestock was capital gain. We think the facts on which our conclusions in those cases rested are clearly distinguishable from those before us here. Suffice it to say that the petitioners here have failed to demonstrate that the cattle in issue were held for breeding purposes. To the contrary, we are satisfied from all of the evidence here that the .substantial volume of sales, the extensive advertisement of cattle available for sale, and, indeed, the whole method of petitioner’s operation, was the conduct of the business of selling cattle and not exclusively that of maintaining a breeding herd from which a few culls and inferior animals were sold from time to time. Biltmore Company v. United States, supra; Gotfredson v. Commissioner, supra. We are not unmindful of the fact that at the hearing, witness Griersdorf testified that each head of cattle here in issue was held as a member of the breeding herd prior to its sale. In the face of all of the other evidence before us, this testimony amounts to nothing more than an attempt by petitioners to bring themselves within the benefits of section 117 (j) merely for the asking. That, of course they may not do. They must demonstrate, by convincing evidence, that the livestock in question were, in fact, held as a part of the breeding herd. Petitioners made no suggestion that any of the cattle here in issue were ever actually used in the breeding herd. While we have rejected the use test as the sole determinant of whether cattle were held for breeding purposes within the meaning of the statute, James M. McDonald, supra, we continue to .believe that actual use of an animal is the most persuasive evidence that it was held as a member of a breeding herd. See Gotfredson v. Commissioner, supra. We are satisfied that Congress, by the enactment of section 324 of the 1951 Act, did not intend to give more liberal treatment to livestock than to any other asset held by any other taxpayer for use in his trade or business. Petitioners here attempt to construe the statute as meaning that any animal, regardless of age, which they say was held as a part of the breeding herd is entitled to capital gains treatment, irrespective of what other evidence in the record may show. In answer to that contention, we think what the Court of Appeals said in Gotfredson v. Commissioner, supra, at 676, is particularly appropriate: We are satisfied that section 117 (j), as it applies to livestock, is not to be given more liberal treatment than when applied to any other asset covered by the section. We note the admonition of the Supreme Court in Corn Products Co. v. Commissioner, 350 U. S. 46 (1955), at page 52: We do not give to the words “regardless of age” the construction urged by the petitioner that all new born heifers and bulls are treated as capital assets from the time of birth. We construe it as meaning that the sale of cattle from the herd, after having served in the herd, is thfe sale of a capital asset, even though the animal is still comparatively young, has not exhausted its usefulness, and is sold at a younger age than is usually the case. Such construction is consistent with the purpose of the amendment to settle the Commissioner’s contention to the contrary, and as made by him in the cases referred to. The amendment still requires that the cattle be “held by the taxpayer for * * * dairy [or breeding] purposes.” the capital-asset provision of § 117 must not be SO’ broadly applied as to defeat ratber than further the purpose of Congress. Burnet v. Harmel, 287 U. S. 103, 108. Congress intended that profits and losses arising from the everyday operation of a business be considered as ordinary income or loss rather than capital gain or loss. The preferential treatment provided by § 117 applies to transactions in property which are not the normal source of business income. It was intended “to relieve the taxpayer from * * * excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions.” Burnet v. Harmel, 287 U. S., at 106. Since this section is an exception from the normal tax requirements of the Internal Revenue Code, the definition of a capital asset must be narrowly applied and its exclusions interpreted broadly. This is necessary to effectuate the basic congressional purpose. * * * Decision will he entered for the respondent.