Robert B. **GOTFREDSON** and Charlotte B. Gotfredson, Plaintiffs-Appellants,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 14686.

United States Court of Appeals
Sixth Circuit.

June 6, 1962.

Thomas F. Chawke, Detroit, Mich., Nathaniel W. Gold, Detroit, Mich., on brief, for plaintiffs-appellants.

Arthur E. Strout, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attorneys, Department of Justice, Washington, D. C., Lawrence Gubow, U. S. Atty., Jay Nolan, Asst. U. S. Atty., on brief, for defendant-appellee.

Before CECIL and O'SULLIVAN, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge.

This is an appeal from a jury verdict in favor of the appellee-defendant. Appellants sued the defendant for a refund of income taxes for the years 1951 through 1955, following payment by them of an additional assessment by the Commissioner of Internal Revenue for these years.

Appellants, who are husband and wife, filed a joint income tax return for each of the years here involved in which was included income from the sale of cattle raised on their dairy farm. The proceeds from the sale of cattle held less than twelve months were reported as ordinary income while that received from the sale

of cattle held longer than twelve months was reported as long term capital gains under Sec. 117(j) (1) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 117(j) (1). (Rev.Act of 1951, and Sec. 1231(b) (3) IRC of 1954, 26 U. S.C.A. § 1231(b) (3).)

A review of the tax returns involved herein by the agents of the Internal Revenue Service resulted in the disallowance of capital gain treatment of the proceeds from sales of cows which had not been held for more than thirty-six (36) months and bulls which had not been held for more than forty-eight (48) months. The disallowance was followed by additional assessments which together with interest aggregated the sum of $24,782.39 for the five years here in question.

The taxpayers, during the years 1951 to 1955 inclusive, owned and operated a dairy farm at Grass Lake, Jackson County, Michigan, consisting of some 1500 acres known as "Gotfredson Farms" and "Gotfredson Dairy Farms" on which they maintained a dairy herd of pure bred Brown Swiss cattle. The main source of income from the farm's operation was from the sale of dairy products.[1]

It was the aim of the taxpayers to develop a herd of top grade milk producing cows through a process of selective breeding and culling. To accomplish this the appellants had as their farm manager an experienced dairyman who was well versed in this process.

Appellants' herd was among the top ten Brown Swiss cattle herds in the country. Selective breeding and culling as practiced by the taxpayers had resulted in an increased average annual milk production per cow from 9,196 pounds of milk in 1951 to 10,728 pounds in 1960. As a part of this process all animals with bad characteristics both negative and positive were eliminated from the herd at such time as defects were apparent through inspection of the animals and the records maintained on them. There was no predetermined age at which the animals were culled from the herd. It is recognized as good practice among owners of herds such as the taxpayers' here to remove by the culling process 25% to 30% of the total number of animals in the milking herd each year for low production or such other causes as sterility, disease, or other defects for the purpose of improving the milk production. All of the cattle thus eliminated from the herd were disposed of by sale. The advertising done by the appellants relative to such sales was negligible, amounting to as little as $7.52 in one

1. During the years in question, the proceeds from the sale of milk and cattle were as follows:

| | 1951 | 1952 | 1953 | 1954 | 1955 |
|---|---|---|---|---|---|
| Sale of Milk | $48,139.85 | $47,726.87 | $46,225.70 | $42,280.60 | $44,625.47 |
| Sale of Purchased Cattle | 1,028.25 | 1,330.82 | 387.41 | 369.08 | 287.02 |
| Sale of Raised Cattle Over 12 Months | 15,992.94 | 16,327.58 | 8,714.80 | 10,906.86 | 12,692.24 |
| Sale of Raised Cattle Less Than 12 Months | 4,432.41 | 1,908.49 | 1,444.84 | 1,122.60 | 977.66 |
| Gross Proceeds | $69,593.45 | $67,293.76 | $56,772.75 | $54,679.14 | $58,519.39 |

year and not exceeding $51.80 in any year.

The government contends here that the proceeds from the sale of cows held less than 36 months and the bulls held less than 48 months should be treated as ordinary income as such cattle were held primarily for sale to customers in the ordinary course of the taxpayers' business rather than for dairy and breeding purposes.

Aside from a stipulation between the parties relative to formal matters the only evidence herein was introduced by the appellants.

The case was submitted to the jury for its general verdict accompanied by three interrogatories as follows:

"*Interrogatory #1.* Were the cattle involved in this action held by the plaintiffs for breeding and/or dairy purposes, rather than for the purpose of sale to customers? * *

"*Interrogatory #2.* Were the cattle involved in this action held by the plaintiffs primarily for sale to customers in the ordinary course of their farming business, rather than for breeding and/or dairy purposes?

* * *

"*Interrogatory #3.* (This interrogatory is not to be answered if you answer either Interrogatory #1 or #2.)

"Were the cattle involved in this action held by the plaintiffs both for breeding and/or dairy purposes, *and* for sale to customers in the ordinary course of their farming business? * * *"

The court instructed the jury in part:

" * * * that an owner of a herd of cattle may hold the cattle for a dual purpose. That is to say, cattle may be held for dairy purposes and also for sale to customers in the ordinary course of the owner's trade or business. If you find that the plaintiffs held the cattle involved in

this suit for this dual purpose, then you must find for the defendant."

Appellants seasonably objected to the submission of both this instruction and Interrogatory No. 3

The jury rendered a general verdict in favor of the government and answered Interrogatory No. 3 in the affirmative, thereby denying the taxpayer any recovery whatever.

Appellants claim error by the trial judge in submitting Interrogatory No. 3 to the jury on the grounds that such was so vague and indefinite as to result in a clouding of the main issue of the case and in confusion on the part of the jury and, further, that any answer to the same by the jury could not be conclusive of the real issue in the case concerning the purpose for which the animals herein were held. Appellants also claim such submission had the effect of withdrawing from the jury's consideration the predominant issue concerning the motive or purpose for which the cattle were held.

We are inclined to the view that the main issue in the case was not properly submitted to the jury by the trial judge. The instruction on "dual purpose" did have particular application to Interrogatory No. 3, and as such peremptorily directed the jury to find for the defendant if it found that the cattle herein were held both for dairy purposes and for sale to customers in the ordinary course of business. As contended by the appellants it had the effect of taking from the jury's consideration the main issue concerning motive or purpose for which the cattle were held. This is the essential and ultimate issue of fact in a case of this type for determination. McDonald v. Comm., 214 F.2d 341, C.A. 2nd 1954; Biltmore Co. v. United States, 228 F.2d 9, C.A. 4, 1955.

The trial judge supported his reason for giving the "dual purpose" instruction herein on Cole v. United States, 138 F. Supp. 186, 191 (D.C.Ill., 1955), a nonjury case, in which upon the facts therein presented the trial judge, among other

things, found that the Coles did have two purposes for the cattle which they held. The "dual purpose" phrase therein employed by the court was only a reference to the factual situation before the court and was not asserted as a controlling principle or conclusion of law. The trial judge in Cole did recognize in his consideration of the case that under the statute Sec. 117(j) (1), Internal Revenue Act of 1939, as amended, it was " * * essential to determine the purpose for which the animals were to be used, i. e., for breeding purposes or for sale." (Citing cases.)

It was noted in the Cole case that the facts therein did not show " * * * as in the McDonald case, supra, that the taxpayers, as early as feasible, culled from the calves those which did not measure up to the high standards of their herd." This was the situation in McDonald v. Comm., supra, and on the record here before us is clearly shown to have been the practice on the Gotfredson Farms.

The trial judge in our view might well have instructed the jury concerning the operation and practices on the appellants' farm which formed the basis of their theory for recovery herein. A special request for an instruction to the jury relative to this phase of the matter was refused by the trial court.[2]

The capital gains provision of the Internal Revenue Code, including Sec. 117 (j) (1) I.R.C.1939, as amended, was intended as a relief measure, United States v. Ekberg, 291 F.2d 913, 922, C.A.8th, 1961, cert. denied 368 U.S. 920, 82 S.Ct.

242, 7 L.Ed.2d 135. Following the passage of this provision of the code questions arose as to whether livestock held for breeding and dairy purposes was held primarily for sale to customers in the ordinary course of business. Cases from the Second, Fourth, Sixth and Eighth Circuits,[3] among others, have dealt with this question holding the crucial factor in determining the character of the property to be the purpose for which it is held. In each instance the court was guided in its decision by a finding on this factual issue, based on the circumstances of the particular case. It is for the trial court upon consideration of the entire transaction to determine the factual category in which a particular transaction belongs. United States v. Bondurant, 245 F.2d 265, C.A. 6th, 1957.

Whether the particular animals are a part of a breeding and dairy herd depends upon the methods of operation of the particular taxpayer and the standards customary in his line of business. No rigid rule can be formulated for determining the issue of purpose for which cattle are held. McDonald v. Comm., supra.

Under the Code of Federal Regulations, Title 26, Par. 1.1231–2(b):

"Whether or not livestock is held by the taxpayer for draft, breeding, or dairy purposes depends upon all of the facts and circumstances in each case. The purpose for which the animal is held is ordinarily shown by the taxpayer's actual use of the animal. However, a draft, breeding, or dairy purpose may be

and all other facts and circumstances shown by the evidence and relevant to the purpose for which such animals were held."

2. "Plaintiffs' Request to Charge No. 5,
"In determining the issue here you are to take into consideration all of the evidence including the manner in which the farm was operated, the process of selective breeding and culling employed in connection therewith and the purpose therefor, the use to which the animals involved herein were put or intended to be put, the reasons why such animals were retained until disposed of or sold, the age of such animals at the time of their sale

3. Fox v. Comm., 198 F.2d 179, C.A.4th, 1952; Gotfredson v. Comm., 217 F.2d 673, C.A.6th, 1954, cert. denied 350 U.S. 346, 76 S.Ct. 46, 100 L.Ed. 753; McDonald v. Comm., supra; United States v. Ekberg, supra.

present if an animal is disposed of within a reasonable time after its intended use for such a purpose is prevented or made undesirable by reason of accident, disease, drought, unfitness of the animal for such purpose, or a similar factual circumstance. Under certain circumstances, an animal held for ultimate sale to customers in the ordinary course of the taxpayer's trade or business may be considered as held for draft, breeding, or dairy purposes. * * * "

The trial court in instructing the jury with regard to "dual purpose" took away from the jury the issue concerning the essential primary purpose for which the appellants herein held the cattle. There is no proof in the record of a dual purpose on the part of the taxpayers, only the unexplained and erroneous instruction by the trial court that such a finding, if made by the jury, must result in a verdict for the government. This in effect was to say that even if the jury found that the cattle under consideration were held for dairy and breeding purposes, and incidental thereto they were also sold to customers, then it must find for the government. The so-called "dual purpose" theory had no place whatever in the proceedings. It furnished the jury an option in its consideration of the case and its decision for which there was no basis in fact or law.

The jury should have been instructed concerning the purpose or motive for which the cattle were held in the light of the facts and circumstances of the case and any inference which reasonable men might draw from the proof. It was reversible error for the trial court to instruct the jury with regard to "dual purpose" and to have submitted Interrogatory No. 3. Both should have been omitted.

The judgment of the trial court is reversed and the case remanded for a new trial not inconsistent with the views herein expressed.